Thank you, Greg. Good morning. First case is number 21-1791, Altice USA v. NJ Board of Public Utilities. Mr. Scherenbeck? Thank you, Judge Hardiman. Good morning, Your Honors. Alex Scherenbeck from the NJ Board of Public Utilities. With the Court's permission, I would like to reserve three minutes of time for rebuttal. That's fine. Thank you, and may it please the Court. This case should be dismissed under Younger v. Harris. If it isn't, the Court should hold that the Cable Act doesn't preempt New Jersey's law. Just as the First Circuit held it didn't preempt Maine's indistinguishable proration requirement. Let's stick with abstention to start out, because obviously, if we find that Younger abstention does not obtain here, we didn't reach the other issue. But let me just ask if you could have raised the Younger abstention issue in the appeal from the District Court's order that granted the preliminary injunction. You didn't do that, as I recall. That's right, Your Honor. It wasn't in the only brief ever filed in that P.I. before that P.I. stayed. Altice moved for a stay of that P.I., and then we withdrew that P.I. appeal after there was a final judgment. But I think there are four reasons why, Your Honor, that doesn't result in forfeiture. The first is that the Younger issue was fully briefed. You've anticipated me. Thank you. Yes, Your Honor. The first is that the Younger issue was fully briefed and decided by court twice, including on the decision on review. That's the opposite of forfeiture. The second, Your Honor, is that Younger can't be forfeited. Just last, in 2020, in PDX, a party moved, a state moved to dismiss not raising Younger. That motion to dismiss was denied. There were then years of discovery before Younger was ever raised in a proceeding. Then the court dismissed on Younger grounds. Nevertheless, this court affirmed, saying that abstention in that case was appropriate. The Supreme Court's done the same thing. In Huffman, Younger wasn't raised in district court. It wasn't decided by the district court. But the court issued a seminal opinion on Younger abstention there, too. This court has raised the issue of Younger abstention sua sponte, which is very inconsistent with the idea that it can be forfeited. Actually, there's a case that's quite analogous, although not exactly analogous, the McLaughlin case from this court, where there, the court was considering a P.I., and there, Younger had been raised in district court, but wasn't raised on the P.I. What this court said is, well, Younger's not in these papers in this appeal, but presumably, it will be addressed below back down on remand. Finally, Your Honor, I would say this forfeiture argument wasn't raised below, even though all the facts and circumstances needed to raise it were before Altice. So forfeiture may have been forfeited by the other side. Is that correct? Yes, Your Honor. Under the old adage, you know, don't throw stones in glass houses. I didn't see that adage in your briefs, but I follow you. Yes. And so, you know, we think then you'd proceed to addressing the factors of Younger, and I would submit, Your Honors, that this is a classic case of a civil enforcement action that requires abstention under Younger. This action was preceded, or began in 2018, under the board's power to initiate proceedings in the name of the state to punish violations of New Jersey cable law. It began with an investigation. We got a lot of consumer complaints. Why did Altice suddenly stop violating the proration requirement? We reached out to Altice, had a back and forth, and ultimately culminated in order to show cause, analogous to a kind of criminal indictment, saying, we think you violated New Jersey cable law, and kicking off the 2018 proceeding. We sought a monetary penalty and ultimately imposed a $10,000 monetary penalty, which is authorized by New Jersey law. And in PDX, this court said that is, by its very nature, a sanction for wrongful conduct. So that checks all the boxes. But counsel, your adversary, sorry, the district court said that it wasn't brought, there was no criminal analog brought to its attention. And in one of your submissions to the district court in a footnote, you identify the statute that happens to embody the criminal analog, but there's no argument that says, this is the statute. It's simply used for the purposes of saying, this contemplates monetary penalties. Did the district court err when it said no criminal analog was brought to its attention? And does it matter? Well, I think it doesn't matter, Your Honor. And we did cite the appropriate statute. Two things on this point. One is the existence or not of a criminal analog isn't and can't be determinative under the Sprint analysis. That factor wasn't even mentioned by Sprint. And so it would be strange if it was a determinative factor. And the Supreme Court has itself applied younger abstention in the civil enforcement context where there was no criminal analog. In Middlesex, for disciplinary proceeding, there's no criminal analog to that kind of proceeding, nor I would submit in the Dayton case where there was employment discrimination. There's no obvious criminal analog to firing someone who's a member of protected class. Nevertheless, the court ordered abstention. So that can't be a determinative factor, although it would go in the mix under this court's cases. And Your Honor, here, there is a criminal analog. The very same statute that authorizes the board to seek the monetary penalties at issue here, it's just that neighboring provision that makes it a criminal misdemeanor to violate the New Jersey Cable Act. So you say the neighboring position, you're talking about subsection A? Yes, Your Honor. 51A. Because here we're just dealing with B, right? And under B, it's that's a non-criminal fine under B, right? Yes, Your Honor. And so the test, I think that the Supreme Court and this court have put forward, the PDX said the question isn't whether the particular conduct could be subject to criminal charges. That's clear in PDX. The question is whether the state could vindicate similar interests through the cable law. And I'd submit that's satisfied here because New Jersey's chosen to vindicate its interests in enforcing the cable laws through both the criminal law in A and the civil law in B. And so I think we... But even if A didn't exist, your argument, as I understand it, is still it doesn't matter because under Middlesex, as you point out, that was attorney discipline. There was not a criminal analog there. So fundamentally, as I understand your argument, you're saying the district court made a critical misstep when it required a criminal analog. Yes, Your Honor. And it's belt and suspenders. It's both. I think it can't be a determinative factor. And here, in any event, we satisfied it. And I think we... And we satisfy all the requirements. Altice, I think, as I read their papers, doesn't even dispute that we match all the additional Middlesex factors because here there's still an ongoing proceeding. They can raise their federal law claim. I think we all know that, in fact, they've succeeded, at least preliminarily, in state court on the very federal law claim they've come here on. Counsel, speaking of ongoing proceedings, counsel has reported to our court. There's a petition for review to the New Jersey Supreme Court. Once this New Jersey Supreme Court acts, whether it grants the petition and rules or denies it, what's the consequence of that? Does our case become moot? Is the New Jersey ruling somehow have a stopple or preclusive effect? What's the impact? So I'll take the two pieces. On mootness, I think that this proceeding is live, so long as there's a non-final resolution of the state court action. That's why I said it's after the court acted. Yes. And so I think, you know, if we were to be granted certification in the New Jersey Supreme Court, not sure when that's going to happen. In our experience, I've asked people who are older hands at this. It's not clear they're going to act really soon. It could be. It's just not obvious. But once they act, there'll be a potential for a petition for cert to the United States Supreme Court. But that would, I think, turn the mootness question here. Now, as to raised judicata, one, you would only reach the question if this court found that younger abstention wasn't appropriate, right? Because if you just. So now we have to leap over the younger until you get there. Now, second, Altice hasn't raised judicata from the state court judgment here. What it has done is say that the federal district court judgment here is preclusive in state court. Now, that was rejected by the appellate division. And but I think it really underscores just how grave the younger intrusion in this case is, because the collateral attack on an ongoing state proceeding is now being levied to try to be binding and determinative on that state court proceeding. And so, Your Honor, you know, and finally, I think if you found if you found if you're we don't get cert and you're lost, then I think it would potentially have a preclusive effect. And the state court decision, the appellate division's decision, seemed to all but incorporate the opinion of the district court here in its own opinion. Am I correct? It followed the line of reasoning. Yes, Your Honor. Yes, Your Honor. And younger wasn't before the state court. I think the state court appropriately thought that's really for this court to figure out. It's it's not going to step on this court's potential assertion of its jurisdiction. Although we flagged the younger issue for the state court, I think it's fair to say it found the district court below persuasive. Of course, the district court, we have a little bit of a house of mirrors effect here. The district court just incorporated by reference large portions of the District of Maine's opinion. And that opinion was just unanimously repudiated on the merits in in that spectrum case. And so I would submit that that the First Circuit's opinion is is is quite persuasive here. And turning to the merits, I would say the reason is, Your Honor, of course, you don't have to get there because of younger. But the reason why it is persuasive is that the tech structure and purpose of the Cable Act made clear that Congress wanted to safeguard consumer protection rules like this, that this isn't regulation of rates for the provision of cable service that Congress had in mind. And you'd start that inquiry by with the powerful presumption against preemption that would say even if there's a plausible reading in the act that doesn't result in preemption, that's enough. And I would submit a unanimous panel of the First Circuit saying it's the best reading of the act without even resorting to the presumption means that at least we have a plausible reading, I'd say we have the best. And it's because as to text, New Jersey's proration requirement doesn't regulate rates, and it doesn't regulate anything for the provision of cable service. The First Circuit found that second provision of cable service point determinative in its analysis, but I begin with rates, because New Jersey's rule doesn't alter the rate set by Altice. It takes its rate as a given, and then it uses it to prorate for only that period of the month where service is provided. Now, Altice's problem is that their definition of this, their interpretation of this statute renders the provision of cable service language entirely superfluous. As the Second Circuit explained in the analogous context of Finneran, Congress could have said related to cable service, it could have used different language, it didn't, it used provision. And Altice's interpretation turns on the what the Second Circuit called the linguistically unlikely and tortured proposition that service is being provided after it's been terminated. And I think, Your Honors, that that reading of the Act is buttressed by the structure of the Cable Act, including the Express Savings Clause of 552d, which says that nothing in the Act should be construed to preempt consumer protection laws unless it's specifically preempted. Has there ever been a challenge to New Jersey's administrative code provision that requires essentially rebates for outages, which sounds like this scenario, right? A circumstance where there's no service provided. Has there been a like challenge to the outages rule? Not to my knowledge, Your Honor, but we are quite concerned that if Altice's position were adopted, then that really classic consumer protection situation of a service outage would also be preempted. And Altice in other contexts has suggested no, no, outage requirements wouldn't be preempted. But of course, I don't think they've given this court or any court the construction of the language of the Act that allows you to distinguish between outage credits, that outage scenario, and the proration requirement. Both, I think, have the same problem with respect to the provision of cable service language. Counsel, how do you respond to your adversary's point that, at least in the briefing, that their basis for taking this no proration position is it enables them to compete with what appears to be non-cable companies? And one of the goals of the Federal Cable Act is to enhance competition. How do you respond to their position that the proration requirement impacts their ability to compete? Sure. Look, I think under the Cable Act and under New Jersey's scheme, their competitors are cable TV providers. And their competitors in New Jersey continue to prorate. They continue to follow New Jersey law. So Altice has carved out for itself a little unfair advantage. Now, I take Altice's point to be there's a lot of cord cutting happening. This is a changing world. And I would submit, Your Honor, they should go to Congress, potentially, and seek a change to the Cable Act if they think this scheme is outdated. I would submit it isn't. Rather, this is a classic consumer protection rule, which says that consumers should only be charged for service they actually receive. If anything, it should be extended to those other contexts. Thank you. And I would also say, Your Honor, that the First Circuit didn't need to reach it because of all the reasons I put forward. And Younger is here, and it wasn't in the First Circuit. So that's another reason this court won't have to reach it. But there's also that customer service requirements savings clause, which has no exception for regulations otherwise preempted in the Act. And the legislative history makes clear that Congress had in mind disconnection and rebates and credits. And this is a credit that relates to disconnection. And the Spectrum decision, I think, Your Honors, also walks through decades of legislative and regulatory action confirming this is not what Congress had in mind. If there are no further questions, I'll save the remaining time I have for rebuttal. Thank you, Mr. Scherenbeck. You've reserved three minutes. Mr. Hellman? Yes, thank you, Your Honors. And may it please the Court. I'm Matthew Hellman on behalf of the Appellee Altice USA. This court should affirm Judge Martinotti's decision, decide the federal question before it, and affirm under the plain language of the Cable Act and Congress's policy judgment that where there's effective competition in the marketplace, it's the market and not state regulators that should be the regulators of cable rates. Let me begin with the Younger abstention point. And I'll start with the waiver discussion that you began with. In their last appeal, the BPU expressly asked this court to resolve the very federal preemption questions that are at issue today. They made a strategic judgment to ask this court for a determination on the merits. And apparently now they've made a strategic judgment that it would be better for this court to abstain on that same merits question. Younger abstention is not a card to be played when it appears to be advantageous in one appeal on the same issues and advantageous on another appeal. So we do think that the state has waived Younger abstention in this case. And if you look at the Supreme Court's language on the question of waiver, the relevant language... Excuse me. You indicated that you believe that the state had waived. First of all, I assume you mean forfeited, but aside from that technical distinction, what of the point made that Younger abstention can actually be raised sua sponte? So the important nature of what is at stake here really would suggest that forfeiture is not something that ought to carry the day, wouldn't it? Well, I disagree for a couple of reasons, Your Honor. It is true that with Younger and frankly, almost every doctrine, a forfeiture can always be forgiven by a court or a court can address an issue if it chooses to that hasn't been raised by the parties. That is true. We're not here to dispute that. I think the question though for this court is whether given that the now has changed its position, whether or not this court ought to ignore that forfeiture. Am I correct that you suggested that the other side engaged in procedural gamesmanship here by not having raised the question, the Younger question earlier? And if so, how would we be encouraging under these circumstances, procedural gamesmanship? The way I put it, Your Honor, is this way. Obviously, the BPU made a judgment that it was in their interest to have a determination on the merits when the PI issue came before this court. That was their judgment. Now, and I don't know what has caused them to change their position on this. Now they have made a judgment that it would be in their primary submission is that it would not be appropriate for this court. So are you suggesting this is akin to a situation where judicial estoppel is what we should conclude occurred? Judicial estoppel is another way of getting at the same issue of taking inconsistent positions for a perceived litigation advantage. Again, the BPU decided, made a conscious decision to obtain a merits decision from this court. But counsel, the briefing to the district court didn't raise they forfeited this argument. Hasn't Altice forfeited its forfeiture argument? I appreciated the Glass House's remark, but I don't think it's accurate with respect to my friend on the other side. We expressly stated to the district court, in this case, on the appeal that's here, that the court ought not abstain in light of the fact that the BPU was simultaneously asking this court for a merits decision. We did not use the word forfeiture. We did not use the word waiver, but we noted the inconsistency in the position, much like the estoppel concept that Judge Smith- But they actually, on appeal, they weren't looking for a merits, quote unquote, decision. They were challenging an interlocutory injunctive order. It was a PI order, Your Honor, but the question before the court, the primary submission was the PI ought to be dissolved because there is no federal preemption in this case. It was exactly the same question. The procedural stage was a little different, but the merits question, on all fours, it is the same question as this. How do you get around our language in from 1989, which it says a party may presumably raise, that's the quote from the opinion, on appeal from a final judgment, a younger argument, it didn't raise on appeal of the preliminary injunction order. We've communicated that it would be this thing that could be entertained. How do you get around McLaughlin or how do you tell us we should get around McLaughlin? Sure. A couple of points there. I think the word presumably captured the court's not fully having worked out what the law ought to be in that area. I would point to the court to the Winston decision, which is more recent, if I'm remembering correctly, which was actually much tougher on younger than we're asking here. There, the state prevailed below and didn't raise younger as an opposition to the other side's appeal. This court said, no, you can't raise younger at this late stage in some post-argument briefing. Here, and I just want to emphasize this, it is the state that has come to this court twice now, one saying, decide the merits, one saying, don't decide the merits. That's a classic case of forfeiture that the state has given no good reason why it ought to be ignored in this case. And as the case comes to us now, we have a district court opinion that addressed younger, correct? Yes. Okay. And now we have an appellant who raises a younger argument, right? Yes, your honor. Yes. Are there any cases, I'm not aware of any, but perhaps you can cite a case where the district court joined and adjudicated an issue and that issue was promptly raised on appeal where the circuit court of appeals, any circuit court of appeals said forfeiture? Well, the cases I would point the court to, we talked about them in our brief, are Walnut Property and Gutman. And those are cases in which there was no younger abstention argument raised on a first appeal on the case. And then later on the government entity and a later appeal tried to raise younger abstention and the court said, no. And this is really a confluence of a couple of doctrines here. This isn't just, if there had been no first appeal, then of course we wouldn't be talking about this because it had been raised below and raised in court. What makes this different is that not only was there a prior appeal in this case, it was the state that was the entity that took the appeal. And in that prior appeal, they said, decide the merits of this case, decide the merits. They expressly urged this court to decide the merits. And it's that combination of the before compared to the after that makes this a forfeiture situation. Counsel, I'd like to follow up on sort of the thought. I think that Judge Hardiman in of us, which is we have a case where we are reviewing the district court's opinion on the very issue you say has been forfeited or waived depending on your nomenclature and the proper circumstances. In any event, the purpose of both of those doctrines in part is to ensure that the adverse party has a chance to respond to the argument put forth and the adjudicator has a chance to provide a perspective about it. So how is enforcing, assuming there was a forfeiture by not mentioning it in their preliminary injunction brief, how is that in furtherance of the goals of these forfeiture and waiver principles? I'm not disagreeing that there's an opinion below rejecting the younger abstention argument in this case and that it is briefed here in this court. The point we're trying to make is really akin to what Judge Smith is saying. Having asked for a merits determination in appeal one, it is not proper for them under estoppel-like principles or forfeiture-like principles to say it's really important that this court not address the merits in appeal two. It's a strategic judgment to make these arguments and this court ought not encourage the delayed playing of younger cards or opportunistic playing of younger doctrine whenever a litigant thinks that, well, on this appeal I'd really like to actually have a merits determination versus on this appeal I think I'd rather not have a merits determination. Let's assume we disagree with you on this subject and that younger is right for our consideration. Absolutely. Do you agree that the district court made a mistake when it's held if there's no criminal analog, younger doesn't apply in the face of Ohio civil rights versus Dayton, Middlesex? I mean, wasn't it just plainly incorrect when it made that statement? No, Judge Martinotti got it right and Judge Martinotti said a little bit more than my friend on the other side I think is giving the district court credit for. First of all, but let's just talk about the criminal analog part. This is not under Sprint which is the governing Supreme Court case law here. Only quasi-criminal civil enforcement actions can give rise to younger abstention. So what does quasi-criminal mean? Well, Sprint tells us what it means. One important component of it is that there be a criminal analog for the conduct at issue and as Judge Martinotti said, there is no criminal analog here whatsoever. Let me just interrupt you there for one second because I think what you just said is very important. I think you said one critical component. That means it's not a sine qua non, right? It's a factor. Sprint doesn't tell us whether or not one factor could be dispositive. It talks about factors that should be considered. There's got to be two or anything like that, but where I'm trying to go... It can't be. Let me push you a little on this. It can't be a sine qua non because Sprint did not overrule Middlesex and our own opinion, ACRA turf separates this factor from the factors laid down in Sprint, did we not? You do talk... The ACRA case does talk about it in that way, but if I... I understand your Honor's question and I think hopefully I can shed some light on it and talk about what Judge Martinotti found and what this court ought to find. Let me just begin, if I could, with the point that there is no criminal analog in this case. This is a run... The state has acknowledged that... Conceded that there's no possibility of criminal sanctions in this case. This is a run of the mill dispute about the scope of a waiver that we say federal law compelled the BPU to give. So there's no criminal analog. And if there... And I'm unaware of any case from this court, any case from this court ever finding younger abstention in a situation where there's no party at issue could have been charged with a criminal violation. Now, let me get to the other parts of the analysis. This is not... And I think Judge Martinotti was saying this as well. This is not a typical civil enforcement action of the kind that, for example, was in PDX. This is a dispute about the scope of a waiver, a scope of a waiver that we say that federal law compelled the state to give. The state disagrees. There is no wrongful act here in terms of understanding the scope of the waiver. Had we asked for this waiver several years ago, had the BPU said, you know what, we're not giving you the waiver or the waiver isn't going to go as far as you want, we indisputably could have gone to federal court at that point and said, under federal preemption law, we're entitled to this waiver. It's only by an accident that we have the waiver. If you look at page 180 of the appendix and the show cause order, it's all about what type of waiver are we entitled to and what does federal law require. That is not a civil enforcement action in the traditional sense. So if we're talking about the factors that go beyond criminal... Doesn't that go to the merits, though, of the civil enforcement action? If you're correct about that, they shouldn't be breathing down your But there's a chance you're incorrect about that. And I think the reason there's a chance you're incorrect about that is at the time the BPU approved Altice's acquisition of Cablevision in 2016, as a condition of that approval, Altice agreed to abide by the quote, applicable customer service standards, performance standards, and service metrics as delineated under the administrative code, including but not limited to requirements related to billing practices and termination. So even if Cablevision was not obliged to bill by the day, and I appreciate fully your argument about how what they're essentially doing is depriving you of the opportunity to bill by the month and say, if you use us the first of the month, send us a check, if you cancel, too bad. And, you know, a prudent consumer would cancel on the last day of the month, I understand. But even if Cablevision had that, that privilege, it looks like perhaps Altice didn't, because you agreed to abide by the state's billing practices and termination rules, which, which seem to require per diem rebates, if somebody cancels in the middle of Well, a couple of points there, Your Honor, I mean, one, it does say applicable. And if I could, the way I would think about it is this, if we had asked for that waiver, if the BPU had said, the waiver is not going to go as far as you're asking us to go to give, we could have gone to And the question for this court is, is that is the proceeding in which that we're trying to figure out what kind of waiver they gave and how it applies the kind of quasi criminal proceeding, that is the rare exception to the rule that normally federal courts hear federal preemption cases. And and so all all this case, this is not a case in which, you know, the BPU did an audit, or some federal agency did an audit found wrongdoing, and then, you know, initiated a proceeding, you know, straight up, this is just a, it's a case where they got hundreds of complaints and consumers were, were crying foul, and they investigated and they hit you with a penalty. Right. So I guess what I'm what I'm challenging is, I understand it's your position, dispute about the scope of the waiver, from the state's perspective, it's a straightforward civil enforcement procedure, because they don't have any questions about the scope of the waiver, in their mind, LPS agreed to abide by this, let's call it the per diem rule. So don't you have to recognize that, that both sides don't agree on your premise that this is some sort of dispute about the scope of the waiver? Well, I guess I would respectfully disagree, Your Honor, this is a dispute about the scope of the waiver, because it's the question of if the waiver covers, if the waiver has to cover what we say it has to cover, which is a question of federal law, then we're right. It's true that they disagree that the federal law doesn't require the waiver to have that scope. But I would call that a dispute about the scope of a waiver, not a not a traditional enforcement action. And again, I would point the court to ja 180. And the pages around really j 181 79 to 181. And you'll see that when this show cause order was entered, it's all about, you know, what it what was what was going on with this waiver, the VP, and I and we certainly disagree about what was going on with the waiver. But the but the answer about who's right about the waiver is a question of federal law, because we're the ones saying that federal law preempts a waiver that falls short of what we are asking for. And again, why does this matter? Because we're talking about are we on that thin exception to the normal requirement, the virtually unflagging requirement that this court here federal question cases, if this kind of enforcement proceeding with no criminal analog is sufficient to block federal court access, the court really here will have younger eyes vast swaths of normal run of the mill federal preemption cases, which is the exact opposite of what sprint said to do. Let me ask you a practical question. Would it be prudent? You're doing quite well, in the New Jersey Supreme Court chooses not to hear the case, you win the case is over, right? Subject of US Supreme Court review? Yes, Your Honor. Yeah. So wouldn't wouldn't prudence dictate that we sort of sit on this and see what happens in the New Jersey Supreme Court? I don't know. I'm not sure if it's a question of prudence or not. Our submission to this court is this court should decide the federal question that it presents. My understanding is that the New Jersey Supreme Court is likely to act if it acts in the normal course relatively soon on the cert petition. But if the if there's if review is granted, that should not be an impediment to this court deciding the federal question that is before it, there is a little bit of an air of artificiality about this whole discussion, I would say that we've been having that, you know, I think, as the court observed, Judge Mark, excuse me, the appellate division embraced wholeheartedly, Judge Martin oddies reasoning on this found that it was persuasive, compelling, tracked it at every point. That's what federal courts do. They give authoritative interpretations of federal law. Go ahead, Judge Harden. No, no, I was I'll defer to you, I'll just I'll just snark a little bit that that's what state courts do to state courts interpret federal constitution, and it did it quite well, according to your view, but I'll defer to Judge Schwartz. Yeah, I what is surprising is from a matter of how the cards are fairing for you right now on the ground. I'm surprised you're not saying you know, why don't you guys just stay out of this? Stay your hand younger abstain. We got ourselves an active case. We've got ourselves a district court case. We have a troubling First Circuit case from our point of view. I'm surprised that you're not saying stay your hand. Really? Well, I appreciate that. But we have consistently maintained this is a federal question that this court will we think we have the better argument on on rate regulation. I would like to say a few minutes to say a few points about that if I could. Let's turn to that. Let's go to that. All right, laws reads rates for the provision of cable service more than just the word rates. It's got two other components I want you to focus on for the provision. And then I want you to focus on cable service because the word rates is limited to that scenario. How do you get around the reading that for the provision means while providing? That's my first question. My second question is cable service talks about services provided to subscribers. How is a person who's a subscriber? How is a person who's not getting service any longer? A subscriber? Those are my two questions on this statutory interpretation. Yes, Your Honor. Let me say let me let me attempt to answer first a factual point that I think has gotten lost a little bit along the way here. Altice continues to provide service to the customer, even after the customer says, I'd like to terminate. If you have your cable box, you'll keep on getting service. If you have your cable box, you can't on December 15. I returned the cable box service. If Yes, Your Honor, actually, because not because of the cable box, you've returned that. If you return your cable box on the 15th, and you move to Colorado, someplace where Altice doesn't have cable service, you can still I'm holding my hand up as if it's a phone or a tablet, you can still watch the service on the Internet via the Altice app. Just as a factual matter, that's JA 188. We continue to provide service. As long as the consumer lets us provide the service, we're providing service. Let me say that just as a background principle. Now, as to the point about isn't this really about termination? It's not actually about the provision of cable service. That analysis does not reflect the reality of what's going on here. If you cancelled cable service called Altice and cancelled on the 15th of the month, what would your rate be for the 15 days that you were receiving service? Well, one, you would only one, you would have the right to only receive day receive 15 days of service, notwithstanding the fact that you agreed to a month's worth of service. And to the rate that you would be charged would be not some rate that the business chose, but a prorated rate to the monthly rate. What this rule does is if Altice wanted to say, you know what, we will actually offer a daily rate as well as a monthly rate. It'll be $90 a month or $4 a day or something like that. Not under this rule. This rule says, no, if the person has the monthly service and cancels halfway, they're paying $45, not $4 a day. That is rate regulation for the provision of cable service. And there could be a deep policy debate about whether or not that's a good policy, whether or not that's an economically advantageous policy. But Congress made the judgment that where, as is undisputed here, there's effective competition in the marketplace. It's not for the BPU or a regulator to decide, you know what, actually, better policy is a rate structure that has a daily rate prorated to the monthly rate. So this is absolutely a provision that governs and regulates the rates for while you are receiving cable service, even leaving aside the fact that you will continue to receive that service after you terminate. And my friend on the other side said, well, actually, if you look at the Finneran case, that supports us. Finneran, from the second circuit, 100% goes the other way. And in two important ways, if I could say them both. First, Finneran was not about cable rates. It was about the separate charge that that cable company was imposing to terminate. You pay $80 a month for cable, but there's a $20 charge to terminate. And they said, well, that separate charge isn't really the rate for cable. So it doesn't fall within the provision of cable service, just like your honor was saying. But that's a separate charge, not the actual rate itself, which is what the BPU rule operates on. But even if that, I mean, the second point is Congress within months of Finneran amended the Cable Act to say that even those termination charges, which are not the rates for cable, but a separate and additional charge, are not subject to rate regulation where there is effective competition in the marketplace. That is 543B subsection 5, I believe. And the, let me make sure I get that right, 543B5C, yes. The, so if Congress wanted separate charges, not actually for the rates themselves, to be left to the market, it surely wanted regulations that directly regulate the rates at issue not to be left to the market either. So Finneran isn't even on point, but Congress said, well, that's getting too close to what we wanted to leave to the marketplace. So again, this is regulation for provision of service. Let me say a word about outage credits as well, because I in an analogous way, when a customer agrees to buy a month's worth of service from Altice, Altice agrees and is bound to provide a month's worth of service to the customer. If Altice is unable to provide that service, lightning strike, flood, whatever, there's an outage credit because Altice needs to make the customer whole for the deal that they had. Month of service agreed to buy, month of service agreed to provide. That's what outage credit is. So is your position of state and the state regulation requiring reimbursement for outages not preempted? Yes, 100% not preempted. And it's not just my, you know, it's an advantageous litigation position for me to say that. It's because of how it works. If Altice doesn't provide what it's supposed to give, it needs to make the consumer whole. But this regulation says, notwithstanding the fact that the customer and Altice have agreed to a month's worth of service, the customer can actually get daily service at a rate specified by the state, namely the prorated rate. That's also affecting the bargain that the consumer has and regulating the rate directly by doing it. So outage credits are not an issue here. And more than that, they affirmatively show why this is a different kind of regulation. Could the state impose a rule that says a cable company can only charge the customer? So I think that is effectively doing the same thing that this rate, I mean, I want to say that outage credits are different. And so if- I'm asking a different question. My question is, could they impose a rule that would survive any kind of attack from your point of view that says you can only charge when a customer receives service? So the way I would answer that is that rule would be perfectly legitimate within 543 and rate regulation to the extent it's deemed to mean that you have to provide an outage credit. To the extent that rule is interpreted to mean the customer having agreed to pay for a month's worth of service can get- can instead choose afterwards to only take 15 days worth of service. So that is doing the same thing here. But that's- But your response says contractually there was an agreement by the customer to pay for the month. But can the state, without attack, say you can only charge, therefore find your- that clause of the contract invalid? So I think the answer is no to the extent that the basis of the challenge is we have an agreement to offer service at a monthly rate, and instead the consumer- New Jersey is saying you can't do that. You have to actually let the consumer decide when to stop, you know, on what term- what rate structure to use for the service. So in that sense, I don't think that would be allowed. But again, I want to stress outage credits, which are about Altice not doing what it's supposed to do, are perfectly- or are not an issue here. And we agree that they're not preempted in any way. Thank you. All right. All right, Mr. Hellman, we've given you quite a bit of extra time. Can you wrap it up for us? Yes. This is a federal question case that belongs in this court. And regard- and it should be decided by this court under normal principles of jurisdiction and younger. Judge also got it right with respect to the substantive question at issue here. This is rate regulation for the provision of cable service under the plain text of the act. We'd ask you to affirm. Thank you, Mr. Hellman. Rebuttal, Mr. Schoenberg? Thank you, Your Honor. I just want to make a few points that are all responsive to what we just heard. The first on the forfeiture question, I think my friend on the other side was struggling to find a case that's on all fours with this because it doesn't exist. The cases he mentioned, Winston, the party there didn't raise Younger on appeal in its papers on appeal. And so the court declined to reach a question not raised on appeal. In the Walnut case from the Ninth Circuit, that case was twice appealed and twice remanded before Younger was raised. And that's not really a Younger case, Your Honors, so much as a case having to do with the remand rule, a sort of separate rule of the road for federal courts that issues that were not first time. And as to the suggestion that this is gamesmanship by the state, I would submit this situation where we're asking the court to abstain in the face of a state court judgment that is adverse to us, I think is hardly an instance of gamesmanship. It shows, it underscores the state's cross-cutting interest in having comedy and federalism interests respected. The second, to Judge Hardeman's question about a stay, I know Altice hasn't asked for a stay. We don't think a stay is appropriate in particular because Altice is pointing to the federal court judgment below here and saying it's preclusive in that state court proceeding, which really just underlines the Younger concerns here. And so a stay would give that improper argument life, Your Honor. And also it's not clear whether the New Jersey court will be waiting to see how this There might be two sides looking at the other one to see who acts first and be helpful to have this federal court action, improper federal court action cleared out to allow the state court to proceed. On the Sprint case, I think it's clear the factors in Sprint are not checklist, a mandatory checklist. The Sprint itself talks about the factors as being those occasionally present, often present, typically present, and Sprint itself didn't talk about criminal parallel. Now, as to this question of the 2011 proceeding and whether there was a waiver there. Now, I think Judge Hardeman hit the nail on its head. That is ultimately, if nothing else, just a defense for Altice in the state civil enforcement action. In fact, Altice has raised that defense in the state civil enforcement action and state courts properly ignored it because the 2011 action did not provide any such waiver. On page 123, which is from the, of the JA, which is from the 2011 action, the board made clear that the bills submitted by Cablevision, which are what is approved under that state procedure, showed that Cablevision would continue to prorate. And it's not surprising that Cablevision did continue to prorate from when he bought Cablevision. And by its own submission, Altice decided to change its policy across all its natural territories, wasn't making some decision based on New Jersey or its interpretation of New Jersey law. And so, and I think the gist of Altice's point is that, you know, they need to be in federal court. And if they had been granted that waiver, they could have gone to federal, if they had been denied that waiver, they could have, they would have gone to federal court. Well, I suggest the Spectrum case shows just how easily a party could have gone to federal court to get a judgment. All that Altice would have had to do is bring such a case prior to a full civil enforcement action brought by the state for misconduct and its resolution and the filing of a judicial appeal in state court. So Spectrum provides a ready roadmap for how to get preemption claims like this into federal court. And it just says, well, don't wait until you force the state into a full civil enforcement action to punish your transgression. And Judge Schwartz, I think your question on the merits as to provision really underscored that Altice doesn't have much of a leg to stand on as to the, for the provision language. Now, I took Altice's basic response to be outage credits are different than this case because our contracts say we want to force a consumer to buy by the month. But of course, consumer protection laws always act on contracts. The fact that Altice has put in its terms of service, one kind of thing just simply can't be determinative of the question of whether the state is entitled to regulate that kind of contractual provision. And finally, on the Finneran case, I'll say the Finneran case is distinguished because that involved an additional fee rather than a fee for the provision of cable service. That distinction isn't anywhere in the opinion. I think that the first circuit appropriately relied on the textual analysis in Finneran. And finally, Congress didn't pull the rule Finneran. It would be a very odd way to say that states can't regulate downgrade charges to tell the FCC to regulate downgrade charges. And so, your honors, that's our submissions. If there are no questions, thank you. Thank you, Mr. Schoenbeck. Thank you, Mr. Hellman. Thank you for excellent oral argument, very helpful in the briefs as well. We'll take the matter under advisement.